(143 App. Div. 273.)

## FARRELLY v. SCHAETTLER.

(Supreme Court, Appellate Division, First Department. March 10, 1911.)

PRINCIPAL AND SURETY (§ 183*)—RIGHTS OF SURETY—RECOVERY FROM PRINCIPAL—RIGHT OF ACTION.

> The Building Trades Employers' Association was a voluntary association organized to foster the interests of those engaged in the erection and construction of buildings and to procure uniformity, harmony, and certainty in the relations between employers and employés, etc. Defendant, who was in the business of making and dealing in cabinet and architectural woodwork, became a member of the association and gave a bond, with plaintiff as surety, to obey and execute all decisions, prohibitions, and regulations of the association, and agreed to indemnify plaintiff

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for any loss under the bond. The association notified its members by letter No. 76 that the Brotherhood of Carpenters had called strikes against members of the association, and ordered the members to lay off all carpenters employed. Defendant did so, but later re-employed the same men, using them solely in the making of furniture. Plaintiff paid the amount of the bond to the association, though notified not to do so by defendant. *Held*, that defendant had not failed to comply with letter No. 76 by employing the men in making furniture, so that there was no breach of the bond, and plaintiff could not recover for its payment thereon.

[Ed. Note.—For other cases, see, Principal and Surety, Cent. Dig. §§ 539–544; Dec. Dig. § 183.*]

Appeal from Trial Term, New York County.

Action by Stephen Farrelly, as receiver of the City Trust Safe Deposit & Surety Company of Philadelphia, against Caroline A. Schaettler. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

See, also, 124 App. Div. 120, 108 N. Y. Supp. 1132.

Argued before CLARKE, McLAUGHLIN, LAUGHLIN, SCOTT, and DOWLING, JJ.

Alton B. Parker, for appellant.
F. R. Minrath, for respondent.

DOWLING, J. The Building Trades Employers' Association of the City of New York was organized, according to its constitution, "to foster the interests of those engaged in the erection and construction of buildings and other structures, to reform abuses relating to the business of persons so engaged, to secure freedom from unjust and unlawful exactions, to obtain and diffuse accurate and reliable information as to all matters affecting such persons, to procure uniformity, harmony, and certainty in the relations existing between employers, employés, mechanics, and laborers, and in all lawful ways to promote and protect the business interests of the members of this association; but there is no intention, nor shall there be any action on the part of this association, to control or in any way deal with prices or restrict competition." The estate of F. Schaettler, a member of the Association of Interior Decorators and Cabinetmakers, engaged in the business of making and dealing in cabinet and architectural woodwork at 533 West Thirty-Fourth street, New York City, subscribed in writing to the said constitution and consented to be bound thereby; the signature being "F. Schaettler," but it concededly being made by George Schaettler, who was the attorney in fact and manager for his mother, Caroline A. Schaettler (the defendant), who, as executrix of the estate of her husband, F. Schaettler, was conducting the business in question.

On or about June 11, 1903, George Schaettler, on behalf of defendant and with her authority, made application for a bond or undertaking in the sum of $1,000 to the City Trust Safe Deposit & Surety Company of Philadelphia, which was granted, and a bond issued and delivered, dated June 13, 1903, whereby said company bound itself in the sum named to the Building Trades Employers' Association, its pres-

ident, his successors, and the individual members thereof, as surety, that F. Schaettler should "duly and faithfully obey and execute any and all such decisions, orders, prohibitions, and regulations of said board of governors of the said Building Trades Employers' Association, given in pursuance and under the authority of the constitution and by-laws of said association." This undertaking was to continue for the period of one year, with the privilege of renewal upon written notice. The privilege was exercised, and the undertaking continued in force until June 13, 1905. Under the terms of the application, the applicant was to indemnify the company for any loss it sustained by reason of the undertaking. On or about August 4, 1904, the association issued circular letter 76, whereby its members were notified that certain labor unions, including the Brotherhood of Carpenters, "had called strikes on various members of the Building Trades Employers' Association, notably on the Subway and the Trinity Building, in violation of existing agreements," and that the unions had failed to return to work, although requested so to do. Wherefore the board of governors had passed the following resolution:

"Resolved, that unless the unions now on strike return to work on Friday, August 5, 1904, a general lockout of members of said unions is hereby declared and ordered, said lockout to include a radius of 25 miles from the City Hall."

In conformity with this action, the members of the association were instructed and ordered to lay off all carpenters, electrical workers, plasterers, tile layers, metal lathers, and elevator constructors on Monday morning, August 8, 1904, all plumbers to be laid off on the morning of August 9th, and the order was declared to be an imperative one, to be complied with unless officially recalled. With this order 76 defendant duly complied on August 8th, laying off all of the designated classes of laborers then employed by her. On September 22, 1904, the association sent to its members circular letter 87A, giving notice of the passage by its board of governors of a resolution that, as the Brotherhood of Carpenters had violated the arbitration agreement, they would no longer recognize that body, and advising its members that the Greater New York Carpenters' Union was organized, with a membership of 1,000, and was negotiating a trade agreement with Masters' Associations of the trade. It then concluded thus:

"The emergency committee learn that some of the members of the Brotherhood of Carpenters are willing to go to work and sign the arbitration plan, but are not willing to join the new union. These men must not be set to work by the members of this association, nor any Brotherhood carpenter who does not at once join the Greater New York Carpenters' Union. You are directed by the emergency committee to see that all carpenters now in your employ who are competent become members of that union at once. Apply for cards, information, etc., at 322 Fourth Ave., N. Y. City. Tel. No. 2124 Gramercy."

Some time about the end of October, 1904, defendant re-employed the carpenters laid off by her pursuant to circular letter 76; but as the learned court has found by its decision, which finding is amply supported by the evidence, "such workmen were employed solely in

the manufacture of furniture, and not upon any work relating to the building industry, or the business interests in such building industry of the members of the Building Trades Employers' Association until after said 'F. Schaettler'- had been expelled from membership in said association." The testimony discloses that these carpenters worked only in making tables, chairs, and desks. Thereupon, on October 26, 1904, charges were preferred to the board of governors of the association against "F. Schaettler," as a member, of violating the orders contained in circular letters 76 and 87A, "by employing members of the Brotherhood of Carpenters contrary to the instructions therein contained." The grievance committee, having tried the charges, reported to the board of governors, which thereupon passed a resolution that the bond of "F. Schaettler" be forfeited and that the member be expelled from membership in the association. Thereafter, upon notice of the proceedings had on the charges, and of the forfeiture, the company paid the amount of the undertaking to the association, after having been notified by defendant not to do so. To recover the amount thus paid, with counsel fees, the present action is brought.

This court has held, in Farrelly v. Schaettler, as Ex'x, 121 App. Div. 678, 106 N. Y. Supp. 445, that the obligation subsisting under the application for the bond and the agreement for indemnity therein contained was personal to the defendant, and that she had no power to bind her husband's estate to such an obligation, which was quite outside the valid execution of the power given her by his will to continue his business. It was also held in McCord v. Thompson-Starrett Co., 129 App. Div. 130, 113 N. Y. Supp. 385, affirmed without opinion 198 N. Y. 587, 92 N. E. 1090, that circular letter 87A was against public policy, illegal, and void (citing Curran v. Galen, 152 N. Y. 33, 46 N. E. 297, 37 L. R. A. 802, 57 Am. St. Rep. 496, and Jacobs v. Cohen, 183 N. Y. 207, 76 N. E. 5, 2 L. R. A. [N. S.] 292, 111 Am. St. Rep. 730), but that circular letter 76 was a valid exercise of the powers of the association. The trial, forfeiture, and expulsion having been had for a violation of both these circular letters 76 and 87A, and 87A having been adjudged to be void, the expulsion can be sustained only if the member violated letter 76. Full compliance was had with this at the time designated. Defendant's liability can, therefore, be predicated only on the subsequent re-employment of the Brotherhood carpenters as an act in violation of the requirements of letter 76.

We think it cannot be so regarded. Had the workmen, when re-employed, been engaged in business relating to the building trade industry, a different question might be presented. But here they were engaged only in making furniture, a business which had no relevancy whatever to that for the protection of which the association was organized and with which alone it was concerned. The twenty-fifth finding of the decision must be read in connection with the twelfth finding, for the latter explains and limits the former, and there is no proof of the violation of either circular letter 76 or 87A, save in so far as it is established by testimony supporting the twelfth finding.

The judgment dismissing the complaint is therefore correct, and should be affirmed, with costs to the respondent. All concur.